Milligan, J.,
delivered the opinion of the Court.
This is a bill, filed in the Chancery Court at Nashville, to enjoin an action at law, for discharge and general relief.
The bill alleges that, on the 5th of January, 1857, the defendant, M. W. Wetmore, made his promissory note, due and payable twelve months from the date thereof, for the sum of $9,000, upon which the com *479 plainant, Linclsley, became tbe accommodation indorser. The note was afterwards discounted by the Bank of Commerce, of which the defendant, John D. James, was the President and principal owner. The bank, as stated in the bill, made an assignment of its assets, after the note in controversy was discounted to the defendant, Thomas G-. Jones, as trustee, for certain purposes, specified in the trust. This note was passed, under this assignment, to the trustee.
It further appears that, since the agreement, the defendant, John D. James, brought his action at law in the Circuit Court of Davidson County, in his own name and right, to recover the note, and that he is prosecuting it to final judgment.
The bill also charges, that the note was discounted at usurious rates of interest, greatly beyond the legal rate of six per cent.; and that the same should have been credited on the note before suit.
It is further alleged, that Wetmore assigned to the defendant, John D. James, and the bank, several thousand dollars, in other paper, to secure the payment of the note, and that he has since made large payments thereon, for which the complainant is entitled to credit. The payments and collaterals assigned to secure the note, as charged in the bill, are, if properly applied, sufficient to relinquish the note. But the former have not been credited, and the latter are lost, or misapplied. The amount of both are unknown to the complainant, and Wetmore has left the State insolvent.
The bill seeks a discovery of the amount of the col-laterals, and the payments, and their application as *480 credits on the note in controversy. The discovery is sought against of the bank, and the defendant, John I). James, and they are required to answer, but not under oath.
The defendants, John D. James and the bank, demurred to the bill, which was sustained by the Chancellor, and the bill dismissed. From this decree the complainant prosecuted an appeal in error to this Court.
There are six specific causes of demurrer assigned, which constituted the chief grounds of contest in the Court below; and they are made the basis of the argument here.
For all the practical purposes of this case, it will not be necessary to notice the several grounds of demurrer separately. It is sufficient to refer to such only as are necessary to this adjudication, and upon which this decision must turn.
/ The bill, as alleged in the demurrer, furnishes no ground of relief in a court of equity. It is clear, under our practice, that a Court of Chancery has no jurisdiction when the party has a perfect remedy at law, free from difficulty and embarrassment: 1 Meigs’ Digest, 386. But, it is not, at all times, readily ascertained whether or not such a remedy exists. Each case rests on its own peculiar facts and circumstances, and they must be judged of by the Court hearing the cause; and if the remedy is complete, unembarrassed, and adequate at law, a Court of Chancery will not entertain jurisdiction.
Admitting this to be the rule, in such cases, governing courts of law and equity, it is insisted that the *481 jurisdiction of courts of equity, over usurious contracts, is merely statutory; and that the Act of 1846, ch. 167, which conferred the jurisdiction, is repealed by the 41st section of the Code; and the jurisdiction of Courts of Chancery, in matters of usury, goes with the repeal of the Statute.
We do not concur in this view of the law. The Act of 1835, ch. 50, which, with some modifications, has been carried into the Code, has never been held as either conferring upon, or ousting Courts of Chancery of their jurisdiction over usurious contracts.
The jurisdiction of courts of equity and courts of law, in matters of usury, was concurrent, even before the Statute of 1835. The Statute conferred no new jurisdiction on either tribunal. It prescribed the mode in which, in a court of law, the plea of usury might be made availing. “Courts of equity,” [and, indeed, courts of law, also,] says Judge Story, “will assist the borrower to recover back the excess paid beyond principal and lawful interest; but no further. For it is no just objection to say, that he is particeps criminis, and that volunti non fit injuria. It would be absurd to apply the latter maxim to a man, who, from mere necessity, pays more than the other can, in justice, demand, and who has been significantly called the slave of the lender. He can, in no just sense, be said to pay voluntarily; and as to the particeps criminis, he stands in vinculis, and is compelled to submit to the terms which oppression and necessity, impose upon him: 1 Story’s Eq. Jur., sec. 302.
*482 The same principle is fully recognized in the case of Bumpass vs. Reaves, 1 Sneed, 595. In that case, it is held, in direct reference to the Act of 1835, ch. 50, that courts of law and equity, have concurrent jurisdiction of the subject of usury; and, therefore, the court which first has possession of the subject, must, upon principle, finally conclude it by its judgment, subject to reversion, as in other cases. And so it was held by this Court, that after a trial at law, a court of equity will not entertain a hill for relief against usury, except in special cases, when, on account of the complicated and embarrassed state of facts in which the usury originated and consists, the remedy was inefficient and inadequate for its redress: McKoin vs. Cooly, 3 Hum., 561; Frierson vs. Moody, 3 Hum., 565.
But this rule was changed by the Act of 1844, ch. 167, which, in substance and effect, declared, that, in usury cases, courts of equity shall entertain jurisdiction, and give relief, notwithstanding there was a trial at law, and the defendant failed to make his defense, or having made it, “failed for want of proof.”
But this latter rule is, again, by the adoption of the Code, changed. The Act of 1844, ch. 167, is not brought forward into the Code, and it is, by implication, if not directly, repealed by section 41 of the Code. The Act of 1835, ch. 50, is substantially retained, with the additional provision of section 4300— that, “The Courts of Chancery, having jurisdiction concurrent with courts of law, for the abatement and re *483 covery of usury,” it, therefore, follows as a consequence, that the law, involving the jurisdiction of courts of equity and law, in matters of usury, and the right of the one or the other, which first takes jurisdiction of the case, to conclude it by its judgment, or decree — stands precisely as it did prior to the passage of the Act of 1844, ch. 167.
The court of law, therefore, in this case, having first obtained jurisdiction of the subject, must conclude it, by its judgment, unless there are special reasons, arising out of the complicated and embarrassed state of facts surrounding the case, which would render it inefficient and inadequate to afford the redress sought.
This embarrassment, it is insisted, is found in the facts of this case. The amount of payments by Wet-more, and the character and amount of collaterals assigned by him to secure the notes, together with their loss or alleged fraudulent application, certainly, under proper allegations in the bill, furnish strong ground for the interposition of a court of equity. The facts touching these transactions, it is alleged in the bill, and admitted by the demurrer, lie within the knowledge of the defendants, and are wholly unknown to the complainant. A discovery of them is sought from the defendants, John D. James and the bank — not in aid of the action at law, but as a ground of equitable jurisdiction, and for general relief.
It is impossible to say that these facts, as they are stated in the bill, do not greatly embarrass the complainant’s remedy at law, and, especially, his equity, arising out of the assignment of the collaterals, and *484 their loss or fraudulent application; and, under proper allegations, would, in our opinion — all other questions out of the way — not only entitle the complainant to a discovery, hut confer the jurisdiction on a court of equity, to take cognizance of the whole cause: Newborn vs. Glass, 5 Hum., 520-522.
But, under the form of this bill, is the complainant entitled to a discovery; and, if so, when an answer, under oath, is waived, what would he gain? A discovery is not a matter of course — the complainant must always show himself entitled to it. To do this, it is necessary to allege in the hill, that the facts are material to the plaintiff's case, and that the discovery of them hy the defendant, is indispensable as proof; for if the facts lie within the knowledge of witnesses, who may he called in a court of law, that furnishes a sufficient reason for a court of equity to refuse its aid. The hill must, therefore, allege — and, if required, the facts must he established — that the plaintiff is unable to prove such facts hy other testimony: 1 Story’s Eq. Jur., sec. 74; Gibson vs. Hoyt, 1 John. Ch. R, 543; 4 John. Ch. R., 469; Whitesides vs. Lafferty, 9 Hum., 27.
In this case, the materiality of the facts sought to be discovered, perhaps, sufficiently appears; hut it is nowhere alleged, that the complainant is not able to prove them hy other witnesses. This is necessary, and fatal, on demurrer, to the hill as a bill of discovery.
Admitting that the hill had been properly framed as a hill of discovery, were the defendants, John D. *485 James and the bank, bound to answer? The discovery is sought, and the answer of the defendants, under oath, expressly waived. The bank, as a corporation, cannot answer, except under its corporation seal; and a disclosure, under the common seal of the corporation, however false, would subject the corporation to no punishment; and it would, therefore, of course, answer nothing to its prejudice. To avoid this difficulty, when it is necessary to obtain a disclosure from a corporation, it seems to be allowable to make a principal officer or agent of the corporation, a party, so far as the bill seeks for discovery; and that may be done, although such officer or agent, has no individual interest in the suit, and no relief can be had against him: 1 Danl. Ch. Pr., 180, 181, note 1; Story’s Eq. Pl., sec. 235; 2 Story’s Eq. Jur., secs. 1500, 1501.
This practice is founded upon authority, and sustained by sound reason. It at once gives the Court jurisdiction of the party of whom the disclosure is sought, and confers the power to punish for contempt; and, at the same time, furnishes to the complainant the benefit of a discloure, under oath. But this practice may not be resorted to, when the same object can be accomplished by making such officer or agent of the corporation, a witness. This must be done when practicable, and equally efficient; but cases may arise, in which it becomes necessary to make officers or agents of corporations, parties, when they have no interest, for discovery, merely; and, in such cases, the practice ■ seems now, as a doctrine of courts of- equity, *486 firmly established: 2 Story’s Eq., sec. 1501, note 2, with authorities there cited.
Under this rule of practice, it follows, that, • in order to obtain a discovery from the bank as a corporation, it was only necessary to require John D. James, as the President, and principal officer of the corporation, to answer for the corporation. This was not done; but James was required to answer in his individual capacity, but not under oath. Was he bound to disclose; and, if so, how far was his answer, in response to the matter of discovery in the bill, evidence in favor of the defendant? Ordinarily, if the bill is for discovery of evidence, and the answer is directly responsive to the bill, the complainant is hound by it, and no proof to sustain it is either requisite or necessary: Napier vs. Elam, 6 Yer., 108-116. And this for the reason that the complainant, by seeking a discovery of the defendant, makes him a witness as to the facts sought to be disclosed, and cannot, because it is against him, object to the testimony: James vs. Perry, 10 Yer., 81; 2 Story’s Eq. Jur., 1528.
This is the rule as established by repeated decisions in this State, when the answer is under oath; but how is it when the oath is waived, and thereby loses its character as evidence? The Code, sec. 4317, declares: “The plaintiff may, in his bill, waive an answer from the defendant, under oath; in which case, the answer will be entitled to no more weight than the bill, as evidence.”
*487 Language, it would seem, could not be clearer than the words of the Statute; and all the difficulty that arises on the construction, grows out of the conflict of authorities, found in the books, in relation to the weight of an answer not under oath, without reference to any existing Statute. The answer of an individual not under oath, as the answer of a corporation under its common seal, seems, in our practice, only to create an issue in pleading, between the parties; and no decree without more, can be rendered, as to the issue thus created: Van Wyck vs. Norvell, 2 Hum., 192-196; 2 Story’s Eq. Jur., 1528.
True, the answer not under oath, as well as an answer regularly sworn to, either in a bill for discovery, or for general relief, may contain such admissions as would entitle the complainant to a decree; but if the oath is expressly waived by the bill, it cannot, even in a bill for discovery, and when the answer is directly responsive to the allegations in the bill, so far be treated as evidence, as to enable the defendant, without more, to a decree in his favor: Bartlett vs. Green, 4 Page’s R., 503; Fisher vs. Miller, 5 Page’s R., 25.
Other grounds of demurrer have been insisted on in argument: among which is the fact, that the Act of 1855-6, ch. 250, under which the “Bank of Commerce” was organized, prohibits the bank from discounting or shaving notes, at a greater rate of interest than six per cent.; and, on a disclosure of the usury charged in this bill, the bank would be exposed to the forfeiture of the note in controversy, as well as its charter. *488 As a general rule, courts of equity will not enforce forfeitures, or, on a bill of discovery, oblige the defendant to disclose wbat may subject bim to a penalty, or forfeiture, or criminal accusation. But whether this rule applies in this case, in which it appears that the action at law, is in the individual name and right of John D. James, and not in the name of the bank, is not necessary now to be determined.
The decree of the Chancellor sustaining the demurrer and dismissing the bill, must be confirmed; and the bill dismissed without prejudice.